UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

LORI KANDZERSKI,                          :
        Plaintiff,                      :
                               :
        v.                             :     C.A. No. 15-401ML
                               :
CAROLYN W. COLVIN, ACTING                 :
COMMISSIONER OF SOCIAL SECURITY,          :
        Defendant.                      :

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

     Plaintiff Lori Kandzerski filed disability applications seeking Disability Insurance

Benefits ("DIB") and Supplemental Security Income ("SSI") under § 205(g) and § 1631(c)(3) of

the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3) (the "Act") based on her perception that

her back pain and mental impairments prevent her from performing any work.  Two expert

physicians and two expert psychologists carefully reviewed over five hundred pages of records

and opined to less-than-disabling limitations.  An occupational therapist who performed a

comprehensive functional capacity evaluation at the request of Plaintiff's primary care physician

observed that Plaintiff was able to perform at least at the sedentary level but declined opine to

her maximum functional level because of "self-limitation and inconsistent level of effort."

Otherwise, no medical source has opined to disabling limitations, either physical or mental.

Nevertheless, Plaintiff contends that the residual functional capacity ("RFC")[1] findings by the

Administrative Law Judge ("ALJ") are not supported by substantial evidence and that the ALJ

did not properly evaluate Plaintiff's credibility.  The matter is before the Court on Plaintiff's

---

[1] Residual functional capacity is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting."  20 C.F.R. § 404.1545(a)(1).

motion for reversal of the decision of the Commissioner of Social Security (the

"Commissioner").  Defendant Carolyn W. Colvin ("Defendant") has filed a motion for an order

affirming the Commissioner's decision.

The motion have been referred to me for preliminary review, findings and recommended

disposition pursuant to 28 U.S.C. § 636(b)(1)(B).  Having reviewed the entire record, I find that

the ALJ's findings are more than sufficiently supported by substantial evidence and recommend

that Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 11) be DENIED

and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 14)

be GRANTED.

## I.    <u>Background</u>

Despite a record, mostly from the Providence Veteran's Administration Medical Center

("VA"), that exceeds 1000 pages, no source has opined that Plaintiff has disabling limitations.

During the hearing, the ALJ pointed this deficit out to counsel – "while the records are

voluminous, really nobody has indicated a precise functional limitation to rebut the DDS."  Tr.

63.  In response, counsel represented that opinions were being prepared and would be submitted

by Plaintiff's primary care provider (Dr. Dawna Blake) and her treating psychiatrist (Dr. Sadaf

Ali).  <u>See</u> Tr. 62-63.  The ALJ agreed to hold the record open, but nothing was provided.  Tr. 82.

Instead, Plaintiff submitted a Functional Capacity Evaluation ("FCE") report prepared by

an occupational therapist based on testing conducted two days after the ALJ hearing, on

December 6, 2013.  Tr. 978.  The FCE report states that it was "requested by the referring

physician [Dr. Blake] to determine the client's current level of function for the purpose of

completing disability determination documentation."  <u>Id.</u>  In the report, the occupational therapist

opined that her "[c]linical observations did not match [Plaintiff's] reported level of pain as she

reported severely disabling pain however was able to move through full AROM without complaint of pain and was able to complete functional testing without report of increased pain." Tr. 980.  Based on this finding, the FCE report concludes that Plaintiff's "self-limitation and inconsistent level of effort," coupled with the observed ability to perform at least at a sedentary level, established only that "it is not known if this observed physical demand level is this client's maximum functional level."  Tr. 978-81.  Despite the representation of counsel that Dr. Blake would be submitting an opinion to support Plaintiff's disability claim, after the FCE report that Dr. Blake requested "for the purpose of completing disability determination documentation," Tr. 978, no opinion from Dr. Blake was ever produced.  Nor was anything provided from Dr. Ali.

Plaintiff claims to perceive her lumbar and cervical spine as causing extreme pain and physical limits.  However, the objective medical evidence reflects only "[m]ild degenerative changes."  Tr. 326, 398; see Tr. 69 (ALJ confirms with counsel that records reflect only mild disc disease).  While some tests showed decreased range of motion and strength, Tr. 654-59, other examination findings reflect normal range of motion of the spine, normal gait, and negative straight leg raising tests, e.g., Tr. 327, 532-33, 601-03, 979, as well as normal musculoskeletal examination findings.  Tr. 532-33, 916.  To address her complaints of pain in her cervical and lumbar spine, Plaintiff was prescribed conservative care, including a TENS unit, physical therapy and pain medication.  Tr. 322-24, 533, 654.

To treat her mental impairments, Plaintiff has received regular psychotherapy with a VA therapist, Ms. Ingrid Werge, and had regular appointments for supportive therapy and medical management with VA psychiatrist, Dr. Ali; she also participated in group sessions addressing stress and anxiety led by an array of mental health professionals.  Tr. 288-977.  At the therapy appointments, she reported anxiety and family stress and had varied mood and/or affect; at times,

she reported that she was depressed, anxious, and/or tearful, e.g., Tr. 305, 339-40, 719-20, and, at other times, reported that she was calm with euthymic affect. E.g., 486, 570-71, 714, 782. Otherwise, treating mental status examinations reflect generally normal findings, including that she was cooperative with good eye contact and had intact memory, concentration, and attention. E.g., Tr. 305, 339-40, 571. As the ALJ noted, Plaintiff's Global Assessment of Functioning ("GAF") scores[2] are "all over the place," but many are in the moderate or mild range. Tr. 73-75. In particular, the GAF scores assigned by Plaintiff's longtime treating psychiatrist, Dr. Ali, range from a low of 55, which reflects moderate symptoms, to a high of 70, which reflects mild symptoms. E.g., Tr. 304, 429, 795. By contrast, Plaintiff's treating therapist, a licensed social worker, usually assigned GAF scores of 49 or 50, which are at the top of the range for serious symptoms, though she also at least once opined to a score of 55, which is moderate. E.g., Tr. 306, 676, 880. Other VA providers often assessed Plaintiff's symptoms as moderate. E.g., Tr. 344 (GAF 52); Tr. 488 (GAF 58); Tr. 549 (GAF 65). Plaintiff has never been hospitalized for mental health treatment. Tr. 693.

In June 2013, at her own request, Plaintiff underwent a "brief screening" by a VA psychologist for post-traumatic stress disorder ("PTSD"). Tr. 691-95. At the time of this evaluation, Plaintiff was treating with Ms. Werge and Dr. Ali; while Ms. Werge was on maternity leave (returning in August), the record does not reveal why Dr. Ali did not perform the evaluation. Tr. 691. During the evaluation, Dr. Schartel observed that Plaintiff's mood and

---

[2] The ALJ correctly discounted the importance of this opinion evidence as imprecise, Tr. 53-54, noting the omission of GAF from the most recent update to the Diagnostic and Statistical Manual of Mental Disorders, which eliminated the GAF scale because of 'its conceptual lack of clarity . . . and questionable psychometrics in routine practice.'" Santiago v. Comm'r of Soc. Sec., No. 1:13-CV-01216, 2014 WL 903115, at *5 n.6 (N.D. Ohio Mar. 7, 2014) (citing Diagnostic and Statistical Manual of Mental Disorders at 16 (5th ed. 2013) ("DSM-5")). Nevertheless, adjudicators may continue to receive and consider GAF scores. SSA Admin. Message 13066 at 2-6, available at http://www.nysba.org/WorkArea/DownloadAsset.aspx?id=51489 (starting at p.19 of PDF document) (last visited Dec. 8, 2016). This guidance suggests that a set of GAF scores, assigned over time by a long-time treating psychiatrist, such as those of Dr. Ali, may be worthy of more weight. See id. at 21-22.

affect were depressed, overwhelmed, anxious and very tearful.  Tr. 693.  Based on Plaintiff's complaint of repeated trauma over her life, although she denied a single traumatic event, and based on Plaintiff's descriptions of "significant hyperarousal, as evidenced by irritability, sleep disturbance, constant anxiety and panic attacks," Tr. 694, Dr. Schartel diagnosed PTSD and mood disorder.  Based on history, Dr. Schartel diagnosed ADHD.  Based on Plaintiff's descriptions of rage at a boyfriend (she broke his windshield) and her attack on a woman of whom she was jealous, Dr. Schartel diagnosed personality disorder, rule out borderline personality disorder.  Tr. 693.  Dr. Schartel discussed treatment options but Plaintiff declined any treatment other than what she was already doing, except that she asked Dr. Schartel to see her for therapy until Ms. Werge returned from maternity leave.  Tr. 694-95.  Based on this one-time fifty-minute session with Plaintiff, Dr. Schartel assessed a GAF score of 49, which reflects serious symptoms.  Tr. 694.

In addition to the activities listed in her function report and during her testimony (simple meal preparation, wash dishes, laundry, sweep, vacuum, mop, making the bed, cleaning the bathroom, taking out the trash, use of public transportation, shopping for food, sewing and visiting with friends), the medical record reflects that Plaintiff was treated several times for poison ivy contracted while she was "trimming bushes" and "in the garden yesterday, . . . digging and clearing weeds."  Tr. 704, 762.  It also contains references to a trip to Florida with her daughter to help her move and "hobbies of caring for a fish tank, yardwork" and of "working on geneology."  Tr. 71-72, 241-43, 583, 594, 696.  During the FCE examination in December 2013, Plaintiff told the examiner that she is independent "with self-care ADLs and light IADL tasks."  Tr. 978-79.  The examiner noted that, despite the claim that she needed assistance with

"community tasks especially grocery shopping," she drove herself to and from the FCE examination and "reports no difficulty with driving."  Tr. 979.

During the hearing, Plaintiff told the ALJ that she had applied to the VA for a disability pension; however, the VA found her to be only 20% disabled.  Tr. 52, 65-66.  Also during the hearing, Plaintiff claimed that she must lie down for six hours out of every day and cannot leave her home for five days a week.  Tr. 74.

## II.    Travel of the Case

On August 13, 2012, Plaintiff applied for DIB and SSI, alleging disability beginning December 1, 2011.  Tr. 161-73.  Plaintiff's application was denied initially, Tr. 84-109, 136-39, and on reconsideration, Tr. 110-35, 145-50.  At Plaintiff's request, Tr. 153-55, the ALJ held a hearing on December 4, 2013, at which Plaintiff, who was represented by an attorney, testified, Tr. 58-76.  An impartial vocational expert also testified.  Tr. 76-83.  On December 31, 2013, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Act from her alleged onset date through the date of the decision.  Tr. 43-57.  On June 3, 2015, the Appeals Council denied Plaintiff's request for review, Tr. 10-14, making the ALJ's decision the Commissioner's final decision subject to judicial review.  42 U.S.C. § 405(g).

## III.   Issues Presented

Plaintiff's motion for reversal rests principally on the argument that the ALJ's RFC finding is tainted by error in that it is based on the state agency physicians and psychologists, whose file review was performed before Dr. Schartel's diagnosis of PTSD and personality disorder and before the FCE report prepared by the occupational therapist at Dr. Blake's request. She also contends that the ALJ erred in basing his adverse credibility finding on Plaintiff's

ability to engage in activities that the ALJ found to be inconsistent with her claim of disabling limitations.

**IV.**    <u>**Standard of Review**</u>

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – that is, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  <u>Ortiz v. Sec'y of Health & Human Servs.</u>, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); <u>Rodriguez v. Sec'y of Health & Human Servs.</u>, 647 F.2d 218, 222 (1st Cir. 1981); <u>Brown v. Apfel</u>, 71 F. Supp. 2d 28, 30 (D.R.I. 1999).  Once the Court concludes that the decision is supported by substantial evidence, the Commissioner must be affirmed, even if the Court would have reached a contrary result as finder of fact.  <u>Rodriguez Pagan v. Sec'y of Health & Human Servs.</u>, 819 F.2d 1, 3 (1st Cir. 1987); <u>see also</u> <u>Barnes v. Sullivan</u>, 932 F.2d 1356, 1358 (11th Cir. 1991); <u>Lizotte v. Sec'y of Health & Human Servs.</u>, 654 F.2d 127, 128 (1st Cir. 1981).

The determination of substantiality is based upon an evaluation of the record as a whole. <u>Brown</u>, 71 F. Supp. 2d at 30; <u>see also</u> <u>Frustaglia v. Sec'y of Health & Human Servs.</u>, 829 F.2d 192, 195 (1st Cir. 1987); <u>Parker v. Bowen</u>, 793 F.2d 1177, 1180 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).  Thus, the Court's role in reviewing the Commissioner's decision is limited.  <u>Brown</u>, 71 F. Supp. 2d at 30. The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner.  <u>Id.</u> at 30-31 (citing <u>Colon v. Sec'y of Health & Human Servs.</u>, 877 F.2d 148, 153 (1st Cir. 1989)).  "[T]he resolution of conflicts in the evidence is for the Commissioner, not the courts."  <u>Id.</u> at 31 (citing <u>Richardson v. Perales</u>, 402 U.S. 389, 399 (1971)).  A claimant's

complaints alone cannot provide a basis for entitlement when they are not supported by medical evidence.  See Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 20-21 (1st Cir. 1986); 20 C.F.R. § 404.1529(a).

The Court must reverse the ALJ's decision on plenary review, if the ALJ applies incorrect law, or if the ALJ fails to provide the Court with sufficient reasoning to determine that the law was applied properly.  Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145-46 (11th Cir. 1991).  Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled.  Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) (citing Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985)).

The Court may remand a case to the Commissioner for a rehearing under Sentence Four of 42 U.S.C. § 405(g); under Sentence Six of 42 U.S.C. § 405(g); or under both sentences. Jackson v. Chater, 99 F.3d 1086, 1097-98 (11th Cir. 1996).  To remand under Sentence Four, the Court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim.  Seavey, 276 F.3d at 9; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).  A Sentence Four remand is what Plaintiff seeks in this case.

**V.      Disability Determination**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 416(I); 20 C.F.R. § 404.1505.  The impairment must be severe,

making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-1511.

## A.       Evaluation of Subjective Symptoms

When an ALJ decides not to credit a claimant's testimony, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  See Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986); Rohrberg v. Apfel, 26 F. Supp. 2d 303, 309-10 (D. Mass. 1998).  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence.  See Frustaglia, 829 F.2d at 195.  The lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence so that the credibility determination is determinative, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."  Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

Guidance in evaluating the claimant's statements regarding the intensity, persistence, and limiting effects of subjective symptoms is provided by the Commissioner's 2016 ruling, which superseded SSR 96-7p.[3]  SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016).  In considering the intensity, persistence, and limiting effects of an individual's symptoms, the ALJ must consider the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the

---

[3] At the time the ALJ conducted a hearing and issued his decision, SSR 96-7p controlled as the effective date for SSR 16-3p is March 16, 2016.  There are no material differences between the two rulings for the purposes of this case.

individual's case record.  Id. at *4.  The ALJ must also consider whether an individual's statements about the intensity, persistence, and limiting effects of his or her symptoms are consistent with the medical signs and laboratory findings of record.  Id.

## VI.    Application and Analysis

### A.    The ALJ's RFC Finding

The ALJ principally based his RFC finding on the opinions of the four state agency file reviewers.  Tr. 53.

For mental health-based limitations, the ALJ looked to the opinions of the two expert psychologists, Dr. Jan Jacobson and Dr. Lisa Fitzpatrick, who reviewed the available evidence of record and assessed Plaintiff's mental RFC.  Tr. 91-93, 103-05.  They both found that Plaintiff can manage simple to moderately detailed instructions, can relate adequately to coworkers and supervisors and is able to deal directly with the public on an occasional basis.  Id.  The ALJ nudged the RFC up to a slightly greater level of limitation by restricting Plaintiff to simple routine tasks with no close interactions with coworkers, no team work and no interaction with the public.  Tr. 51; see Shinseki v. Sanders, 556 U.S. 396, 409 (2009) ("the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination;" no error for ALJ to include more restrictive limitations unless they cause prejudice).

For physical limits, the ALJ relied on the opinions of two expert physicians, Dr. R. H. Digby and Dr. Thomas Bennett.  Tr. 53.  Like the state agency psychologists, they also reviewed the available evidence of record and provided RFC opinions.  Tr. 89-91, 101-03.  Dr. Digby opined that Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently and could sit, stand or walk for about six hours in an eight-hour workday.  Tr. 89, 101.  Dr. Bennett's opinion was similar, except that he found that Plaintiff could lift or carry fifty

pounds occasionally and twenty pounds frequently.  Tr. 116, 128.  In his RFC finding, "[o]ut of

an abundance of caution," the ALJ adopted the more conservative approach reflected in Dr.

Digby's opinion.  Tr. 53.

Plaintiff's challenge to the ALJ's reliance on the state agency experts is based on the

timing of their file reviews.  Performed in November 2012 and April 2013, the file reviews did

not consider the massive file that accumulated after the dates on which they were performed.

Because the file reviewers did not see all of the medical evidence, Plaintiff argues that the matter

should be remanded so a medical expert can review the balance of the record.  To buttress the

argument, Plaintiff points to two specific records that she contends, if seen by the state agency

experts, would have altered their opinions.  They are the June 2013 screening report by Dr.

Schartel and the December 2013 FCE report.

Plaintiff is certainly correct that almost 320 pages of material was added to the medical

record after April 2013, when the file review at the reconsideration phase was concluded.  Tr.

15-31, 681-981.  However, most of the new material reflects treatment in connection with an

acute attack of diverticulitis, which required surgery, but is not related to Plaintiff's claim of

disability.  Tr. 49.  Otherwise, the pre-April 2013 record is very similar to the post-April 2013

record, in that Plaintiff continued to make similar complaints and to get similar treatment with

Dr. Blake and others for her back pain, and continued to make similar complaints and to get

similar treatment with Dr. Ali, Ms. Werge and others with respect to the mental impairments.

There is no error in the ALJ's reliance on the state agency expert opinions in such

circumstances.  Compare Nazario v. Health & Human Servs., Comm'r of Soc. Sec., 129 F.3d

1252, 1997 WL 693029, at *1 (1st Cir. 1997) (state agency consultants' functional assessments

constituted substantial evidence despite subsequent evidence in light of lack of change in

claimant's kidney condition), with Alcantara v. Astrue, 257 F. App'x 333, 334-35 (1st Cir. 2007)

(ALJ erred in giving significant weight to non-examining consultant's opinion because it was

based on a significantly incomplete review of the record where "[t]he record repeatedly indicated

that the appellant deteriorated with her parents' deaths"); accord Roberts v. Barnhart, 67 F.

App'x 621, 622-23 (1st Cir. 2003) (expert RFC evaluation of evidence is only "required where

'the record . . . is sufficiently ramified that understanding it requires more than a layperson's

effort at a commonsense functional capacity assessment'") (quoting Manso-Pizarro v. Sec'y of

Health & Human Servs., 76 F.3d 15, 19 (1st Cir. 1996)); Gordils v. Sec'y of Health & Human

Servs., 921 F.2d 327, 329 (1st Cir. 1990) (ALJ may render "common-sense judgments about

functional capacity based on medical findings, as long as the [ALJ] does not overstep the bounds

of a lay person's competence and render a medical judgment").  The ALJ is permitted the

assumption that the agency reviewers are experts in Social Security disability law.  Tr. 53; see 20

C.F.R. §§ 404.1527(e)(2), 416.927(e)(2) (ALJ must consider findings and opinions of state

agency reviewing consultants because they "are highly qualified physicians, psychologists, and

other medical specialists who are also experts in Social Security disability evaluation").

Reliance on such experts is particularly appropriate in a case like this one where no treating

physician or psychologist submitted a contrary opinion.  Tr. 55.

Accordingly, if there be error here, it will be exposed only by a laser-like focus on the

two documents that Plaintiff claims would have altered the file reviewers' opinions if they had

been included in the review set.

Focusing first on the June 2013 PTSD screening by Dr. Schartel, which resulted in the

new diagnoses of PTSD, personality disorder, and rule out borderline personality disorder,

Plaintiff argues that she reported new symptoms of "repeated, disturbing memories, feeling very

upset when reminded of past traumatic events, having angry outbursts, and difficulty concentrating," Pl.'s Mem. at 8, as well as that the diagnosis of personality disorder may have affected the file reviewers' opinions, see id.  The problem with these arguments is that the June 2013 assessment is a one-time "brief screening," after which Plaintiff's interaction with her treating providers continued essentially as before.  Thus, Dr. Ali continued as her treating psychiatrist and sustained the opinion that her symptoms were moderate, consistently assigning GAF scores in the moderate range.  Tr. 732 (GAF 68); Tr. 795 (GAF 68).  Far from treating the Schartel diagnosis as introducing something significantly different, Dr. Ali continued to diagnose ADD, depression and anxiety, with "episodic acute anxiety."  Tr. 732, 795.  Moreover, the symptoms on which Dr. Schartel relied to make the PTSD/personality disorder diagnoses are the same symptoms that are all over the record that was made available to the state agency reviewers.  Thus, chronic sleep problems, feeling angry and irritable, feeling anxious and easily startled, being distractible, having difficulty concentrating, even breaking her boyfriend's windshield and getting into a fight with another woman based on jealousy, are all addressed in the pre-April 2013 evidence.  See, e.g., Tr. 304, 308, 314, 330, 339, 517, 578, 583, 585, 589, 614, 617, 646.

Consistent with this conclusion, Dr. Schartel's new diagnoses did not affect Plaintiff's treatment.  Tr. 694-95.  Rather, they simply add new labels to the same impairments.  Thus, the Schartel opinion does not reflect greater functional restrictions than those addressed in the pre-April 2013 record examined by the state agency experts.  There is nothing in the Schartel report that could call their expert opinions into question.  See Sitar v. Schweiker, 671 F.2d 19, 20-21 (1st Cir. 1982) (even "severe anxiety or depression is not in itself sufficient to establish eligibility for benefits absent a proper showing of related functional loss").

Plaintiff's alternative argument is focused on the occupational therapist's FCE report prepared in December 2013, well after the file review was performed. She contends that the FCE report opines that she is limited to sedentary work and that, at her age, that is enough to be disabling. She argues that the matter should be remanded for further consideration of this critical opinion by a qualified medical expert.[4] This argument collapses under the weight of the plain meaning of what the occupational therapist wrote in the FCE report. She did not opine that Plaintiff is limited to sedentary work. Rather, as the ALJ correctly noted, the report reflects that the examiner's "[c]linical observations did not match [Plaintiff's] reported level of pain as she reported severely disabling pain however was able to move through AROM without complaint of pain and was able to complete functional testing without complaint of increased pain." Tr. 54; see Tr. 980. It says only that the examiner was able to observe that Plaintiff retains functional ability at least at the sedentary level. The occupational therapist specifically declined to opine to a sedentary RFC: "it is not known if this observed physical demand level is this client's maximum functional level." Tr. 981. There is nothing in this report that would require this matter to be remanded.

Based on the foregoing, I find that the ALJ's RFC finding is amply supported by the substantial evidence of record and recommend that it be affirmed.

**B.     Credibility**

---

[4] Citing SSR 96-5p, 1996 WL 374183 and 20 C.F.R. § 404.1512(e)(1), Plaintiff claims that the ALJ had a "duty" to contact the occupational therapist or consult a medical expert once he became aware of the FCE report's reference to her "inconsistent effort" during testing. See Pl.'s Reply Br. at 1. This argument profoundly misreads the requirement in SSR 96-5p – that ruling applies only to an opinion from a medically acceptable treating source that does not clearly disclose the bases for the opinion. The FCE report was not an opinion from a treating source or an acceptable medical source, nor is there anything unclear about it. To the contrary, the FCE report is crystal clear that the tester found an observable discrepancy between Plaintiff's statements about the limiting effects of her symptoms and the reality of what she could do. Tr. 980-81. Further, the regulation on which Plaintiff relies – 20 C.F.R. § 404.1512(e) – was eliminated in 2012. 77 Fed. Reg. 10651-01, 2011 WL 7404303 (Mar. 26, 2012).

Plaintiff's credibility argument appears to be entirely lacking in substance.  The ALJ properly contrasted Plaintiff's claim that she must lie down six hours of every day and cannot leave her house most of the time, Tr. 74, with her statements in connection with these applications and to treatment providers that she is independent in activities of daily living, and can prepare simple meals, make the bed, take out the trash, wash dishes, shop, use public transportation, sew and perform yard work (digging, clearing weeds and trimming bushes).  Tr. 52-53.  He correctly compared the objective evidence of Plaintiff's at-times normal gait, negative straight leg raise tests and normal musculoskeletal examinations with her extreme complaints of disabling pain, as well as her generally intact memory, concentration and attention with her complaints of disabling mental limitations.  Tr. 53.  The ALJ's credibility finding is further appropriately buttressed by Plaintiff's exaggeration of symptoms during the FCE examination conducted specifically to support her disability claim: "[c]linical observations did not match [Plaintiff's] reported level of pain as she reported severely disabling pain however was able to move through AROM without complaint of pain and was able to complete functional testing without report of increased pain."  Tr. 54; see Tr. 980.  Finally, the ALJ noted that the VA evaluated Plaintiff's allegation of total disability and rejected it, finding her entitled only to a 20% VA pension.  Tr. 52.

It is difficult to conjure what is erroneous about this analysis.  One focus of Plaintiff's argument seems to be based on the incorrect assumption that the ALJ should have explored, for example, how much time she spent digging in her garden and clearing weeds before relying on this information as a reason to discount her credibility.  The balance of Plaintiff's credibility challenge seems to be that the ALJ failed to consider the interaction of her mental and physical

disorders though she does not explain why or how that impacted the ALJ's finding that she overstated her symptoms.

I find that the ALJ's adverse credibility finding is amply supported by specific findings that are well grounded in substantial evidence. It is untainted by error and well entitled to this Court's deference. <u>Frustaglia</u>, 829 F.2d at 195 ("The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings.").

**VII.**   <u>**Conclusion**</u>

Based on the foregoing analysis, I recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 11) be DENIED and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 14) be GRANTED. Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party. <u>See</u> Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. <u>See</u> <u>United States v. Lugo Guerrero</u>, 524 F.3d 5, 14 (1st Cir. 2008); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603, 605 (1st Cir. 1980).


/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
December 9, 2016